UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOESPH ZARKY, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Case No. 4:24-cv-00922-AGF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Joesph Zarky's motion filed under 28

U.S.C. § 2255 to vacate, set aside, or correct his sentence.  On March 28, 2023, Petitioner

pled guilty to both counts of a two-count indictment, which charged Petitioner with

Possession of a Firearm After Previously Being Committed to a Mental Institution, in

violation of 18 U.S.C. § 922(g)(4).  The Court accepted Petitioner's plea, and on July 10,

2023, sentenced Petitioner to a 5-year term of probation.[1]

In his pro se motion under § 2255, Petitioner brings two separate claims.  The

Petition is extremely sparse.  First, Petitioner claims his plea counsel provided ineffective

assistance.  Without further elaboration, Petitioner simply assets, "lawyer did not

effectively help me understand my options or pursue a good course of action."  ECF No.

1 at 5.  Second, Petitioner argues that his convictions under 18 U.S.C. § 922(g)(4) are

---

[1] On January 16, 2026, a petition was filed to revoke Petitioner's probation, alleging he was arrested for possession of multiple firearms, one of which was reported stolen.  New counsel was appointed to represent Petitioner.  He was ordered detained and is scheduled to have a final revocation hearing on March 19, 2026.

unconstitutional as they infringe upon his Second Amendment right to possess firearms. *Id.* at 6.

As the record conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's motion without a hearing.

**BACKGROUND**

**Criminal Proceedings**

Petitioner was indicted on May 4, 2022, and charged with two counts of Possession of a Firearm After Being Previously Committed to a Mental Institution, in violation of 18 U.S.C. § 922(g)(4). *United States v. Joseph Zarky*, Case No. 4:22-cr-00263-AGF-1 (E.D. Mo.), ECF No. 1.[2]  On March 28, 2023, Petitioner pled guilty to both counts pursuant to a written plea agreement.  Crim. ECF No. 45.

Pursuant to the guilty plea agreement, Petitioner stipulated to the following facts. On June 1, 2021, law enforcement officers were dispatched to Petitioner's residence after his grandparents' reported concern for their and Petitioner's safety because of his history of mental illness.  *Id.* at 3.  Officers found Petitioner acting erratically and discovered multiple firearms and animal body parts on his person and in his bedroom.  *Id.* at 3–4. He was then escorted to a hospital for a psychiatric evaluation.  *Id.*  Following a hearing in St. Louis County Circuit Court, Petitioner was ordered involuntarily committed to a hospital until June 25, 2021.  *Id.*

---

[2] References to Petitioner's criminal case are designated as "Crim. ECF No. ___."

2

After his release, Petitioner attempted to purchase firearms on multiple occasions but was denied.  *Id.* at 3.  Nevertheless, on July 28, 2021, Petitioner was again found in possession of multiple firearms by law enforcement officers during a traffic stop.  *Id.*

On September 30, 2021, law enforcement officers responded to another report by Petitioner's family who believed that he had taken their vehicle.  *Id.* at 4.  The officers discovered Petitioner with a bloody knife in a nearby wooded area.  *Id.*  Due to Petitioner's erratic behavior, the officers transported him to a nearby hospital for another psychiatric evaluation.  *Id.*  Following another hearing in the St. Louis County Circuit Court, Petitioner was again ordered involuntarily committed until October 20, 2021.  *Id.* While Petitioner was committed, his parents located his vehicle.  *Id.*  In the vehicle, officers discovered an AR-15 rifle, which the family claimed did not belong to them.  *Id.*

On January 29, 2022, law enforcement officers encountered Petitioner when responding to a report of shots fired at a public disc golf course.  *Id.*  Petitioner was again found in possession of multiple firearms.  *Id.*

On May 4, 2022, Petitioner was indicted by a Grand Jury for two counts of Possession of a Firearm After Previously Being Committed to a Mental Institution, in violation of 18 U.S.C. § 922(g)(4), related to the July 28, 2021 and January 29, 2022 incidents.  Crim. ECF No. 1.  Subsequently on May 9, 2022, Federal agents executed a search warrant at the Petitioner's residence, discovering fifteen different firearms and over 4,000 rounds of ammunition.  Crim. ECF No. 45. at 4–5.

The Federal Public Defender's Office was appointed by the Court to represent Petitioner, and soon thereafter, on June 7, 2022, Assistant Federal Public Defender

Brocca Morrison entered her appearance.  Crim. ECF No. 15, 23.  Ms. Morrison filed a sealed motion for a mental health evaluation pursuant to 18 U.S.C. § 4241 regarding Petitioner's competency to stand trial and assist in his own defense.  Crim. ECF No. 33. On January 25, 2023, following a mental health evaluation and competency hearing, Petitioner was determined competent to proceed.  Crim. ECF No. 38.

On March 15, 2023, Petitioner waived pretrial motions.  Crim. ECF No. 42.  The waiver of motions recited, in part, "Counsel has personally discussed this matter with the Defendant and the Defendant agrees and concurs in the decision not to raise any issues by way of pre-trial motions." *Id*.  The Court accepted the waiver, and soon thereafter, Petitioner pled guilty to both counts at the Change of Plea hearing held on March 28, 2023.  Crim. ECF No. 44.

Pursuant to the written plea agreement entered on the same day, Petitioner agreed to waive all rights to contest the conviction or sentence in any post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel.  Crim. ECF No. 45 at 9.  Additionally, the written plea agreement states that Petitioner "is fully satisfied with representation received" from counsel, has "discussed the United States' case and all possible defenses and defense witnesses" with counsel, and that counsel has "completely and satisfactorily explored all areas which the Defendant has requested relative to the United States' case and any defenses." *Id.* at 12.

At the hearing, Petitioner confirmed that he was thinking clearly and able to under the Court Proceeding.  He advised that he was taking the medications for his bipolar condition, as prescribed, and that the medications helped him to think more clearly.

4

Counsel confirmed that she was able to communicate effectively with Petitioner.  Crim. ECF No. 101 at 5–7.

During the change-of-plea hearing, Petitioner confirmed under oath that he had fully discussed the charges asserted against him and his case with his attorney and that counsel had reviewed with him the evidence that the government had against him.  *Id.* at 3–14.  He further confirmed that he had discussed with his attorney both his case and the plea agreement, that he was satisfied with counsel's representation, and that he was guilty of the crimes to which he was pleading guilty.  *Id.*  Petitioner also acknowledged that no one had made him any promises or offers in order to induce him to plead guilty other than what was contained in the plea agreement, nor did anyone threaten or try to force Petitioner to plead guilty.  *Id*. at 35, 46–47.  Petitioner further confirmed that he was satisfied with the representation he received from his attorney, and that there was nothing he wanted his attorney to do for him that the attorney had not done in representing Petitioner.  *Id*. at 8–9, 14.  Specifically, regarding Ms. Morrison, Petitioner stated the following:

> THE COURT: And have you had enough time to discuss both your case and your plea agreement with your attorney?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And are you satisfied with her representation of you in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is there anything you think your attorney should have done but Hasn't done in representing you?
>
> THE DEFENDANT: No. Not that I can think of.

5

THE COURT: Is there anything you asked her to do that she failed or refused to do?

THE DEFENDANT: No.

THE COURT: And to the extent you've had questions, has she answered those questions for you?

THE DEFENDANT: Yes

*Id*. at 8–9.

The Court also confirmed that Petitioner understood that by pleading guilty to the charges he would be deprived of the right to possess firearms. *Id*. 41–42.

After Petitioner pled guilty but prior to sentencing, the United States Probation Office issued its presentence investigation report ("PSR"). In the PSR, the Probation Office determined an advisory Guidelines range of 18–24 months' imprisonment. Crim. ECF No. 51. Petitioner, through counsel, filed his acceptance of the PSR on June 27, 2023, without any objections. Crim. ECF No. 50.

On July 10, 2023, the Court held a sentencing hearing at which Petitioner appeared through counsel. Petitioner confirmed at the hearing that he had reviewed the United States Probation Office's final PSR with counsel. Crim. ECF No. 55. Following the joint recommendation of the parties, the Court sentenced Petitioner to a 5-year term of probation, rather than the advisory Guidelines range of 18–24 months' imprisonment. Crim. ECF No. 56.

Petitioner filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on July 5, 2024. ECF No. 1. On the same day, Petitioner filed a Notice of

Appeal to the United States Court of Appeals for the Eighth Circuit.  Crim. ECF No. 61.

On July 11, 2024, the Eighth Circuit dismissed Petitioner's appeal as untimely.  Crim.

ECF No. 64.

**Motion to Vacate**

As noted above, Petitioner asserts two claims in his pro se motion under § 2255.

First, Petitioner contends that he was provided with ineffective assistance of counsel as

the options available to the Petitioner were not effectively explained to him and that

counsel failed to "pursue a good course of action."  ECF No. 1 at 5.  Second, Petitioner

argues that his convictions under 18 U.S.C. § 922(g)(4) are unconstitutional as they

infringe upon his Second Amendment right to possess firearms.  *Id.* at 6.  The

Government responds that each of Petitioner's claims is without merit and fail as a matter

of law.  *See* ECF No. 8.

**DISCUSSION**

**Legal Standard**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence

imposed against him on the ground that "the sentence was imposed in violation of the

Constitution or law of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack."  Section 2255 rights can be waived in a

plea agreement if a defendant knowingly and voluntarily makes the "decision to be bound

by the provisions of the plea agreement, including the waiver provisions."  *DeRoo v.*

*United States*, 223 F.3d 919, 923 (8th Cir. 2000).  However, a petitioner's ineffective

7

assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006) (citation omitted).

## Claim 1: Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claim is without merit. To establish ineffective assistance of counsel, "the petitioner must show counsel's representation fell below an objective standard of reasonableness and that such deficient performance prejudiced the defense." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Prejudice in the context of a guilty plea requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Prejudice in the sentencing context requires the petitioner to show "a reasonable probability that his sentence would have been different but for the deficient performance." *Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044–45 (8th Cir. 2019) (citation omitted).

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1045 (citation omitted). "Instead, [j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a

8

formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Petitioner has not demonstrated ineffective assistance of counsel. Petitioner argues that his attorney was ineffective for failing to clearly explain all the options available to him and for failing to pursue a "good course of action." ECF No. 1 at 5. He does not identify what options were not explained to him nor explain why his plea was not a good course.

In any event, Petitioner's assertion is contradicted by the record. Petitioner represented in the written and signed plea agreement that he was satisfied with the representation his counsel had provided to him. Crim. ECF No. 45 at 12. Furthermore, Petitioner represented in the plea agreement that he had discussed the case entirely with counsel and that counsel had completely explained all areas of the case to the Petitioner, including any possible defenses. *Id.* Petitioner's claims are also contradicted by his repeated representations to the Court during the plea colloquy. The Court confirmed that Petitioner was satisfied with his counsel's representation; that there were no questions he had that his counsel had not answered; that there was nothing he asked his counsel to do that counsel had not done; that he had read, discussed with his attorney, and understood the terms of the plea agreement; and that he was guilty of the crimes to which he was pleading guilty. Crim. ECF No. 101 at 8–9, 14–15.

Finally, Petitioner has not demonstrated prejudice resulting from his attorney's representation. Petitioner does not allege that but for his counsel's failure to explain his

9

options, he would have proceeded to trial.  Moreover, the Court directly informed Petitioner of his options, including the right to a trial, during the plea colloquy.  *Id.* at 11–14.  While Petitioner does not identify a best course of action he might have pursued here, Petitioner's attorney negotiated a favorable plea agreement for Petitioner.   He received five years of probation rather than the guideline range of 18–24 months.  Thus, Petitioner got a substantial benefit from his plea.

As the record reflects that Petitioner's counsel did not fall below the standard of reasonableness required and that his counsel's performance did not prejudice his defense, Peititoner's claim of ineffective assistance of counsel is without merit and is accordingly denied.

## Claim 2: Second Amendment

### a.  *Procedural Default*

Petitioner's second claim, that his convictions under 18 U.S.C. § 922(g)(4) were unconstitutional because they violated his Second Amendment right to possess a firearm, is procedurally defaulted.  A petitioner "may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction." *Jennings v. United States*, 696 F.3d 759, 762–63 (8th Cir. 2012).  Claims that could have been but were not raised on direct appeal are deemed to have been procedurally defaulted.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

When a claim is procedurally defaulted by failing to raise it on a direct appeal, "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* (citations omitted).

Cause may be established when a claim "is so novel that its legal basis is not reasonably available to counsel." *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986).

A procedural default can also be excused if the actual innocence exception applies. *Id.* at 623–24. The actual innocence exception requires a petitioner to show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Jennings*, 696 F.3d at 766–67 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This exception applies to factual innocence as opposed to legal innocence. *Id.*; *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994).

As noted above, Petitioner argues that his convictions under 18 U.S.C. § 922(g)(4) are unconstitutional because they violate his Second Amendment right to possess firearms. However, Petitioner did not seek dismissal of the charges on this ground nor bring a timely direct appeal to argue his Section 922(g)(4) convictions were in violation of the Second Amendment. As such, Petitioner has procedurally defaulted this second claim.

Moreover, neither the cause and prejudice test nor the actual innocence exception apply here. First, with respect to cause, Petitioner's claim is not novel, and the legal basis was sufficiently available to counsel. Prohibitions on the possession of firearms by the mentally ill have a lengthy historical pedigree and are reinforced in the Supreme Court's recent Second Amendment holdings. The Supreme Court has stated that there is a

11

"longstanding prohibitions on the possession of firearms by felons and the *mentally ill*." *D.C. v. Heller*, 554 U.S. 570, 626–27 (2008) (emphasis added); *see also New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022) (holding that the Court's decision was consistent with *Heller*). These cases were decided prior to Petitioner's guilty plea, were readily available to his counsel, and did nothing to alter the historical prohibitions on the possession of firearms by the mentally ill. Therefore, cause has not been established. Since cause has not been established, the Court need not address whether prejudice exists. *See Bousley*, 523 U.S. at 622.

Second, Petitioner does not bring any claim establishing actual innocence and the record does not reflect the actual innocence of Petitioner. Petitioner does not argue that, more likely than not, no reasonable juror would have found him guilty beyond a reasonable doubt if he had proceeded to trial. Therefore, the actual innocence exception does not apply in this case.

In conclusion, Petitioner has procedurally defaulted on his post-conviction claim that 18 U.S.C. § 922(g)(4) is unconstitutional.

### b. Waiver

Even if Petitioner had not procedurally defaulted his second claim, he is barred from asserting this claim by the waiver of his post-conviction rights entered into as part of his Guilty Plea Agreement. As noted above, post-conviction rights can be waived in a plea agreement if a defendant knowingly and voluntarily makes the "decision to be bound by the provisions of the plea agreement, including the waiver provisions." *DeRoo*, 223 F.3d at 923. "When reviewing a purported waiver, [the Court] must confirm that the

12

appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *United States v. Andis*, 333 F.3d 886, 889–90 (8th Cir. 2003) (en banc).  The government bears the burden to establish (1) that the claim "is clearly and unambiguously within the scope of the waiver," (2) that "the defendant entered into the waiver knowingly and voluntarily," and (3) that dismissal "would not result in a miscarriage of justice." *United States v. McIntosh*, 492 F.3d 956, 959 (8th Cir. 2007).

The Court finds that Petitioner's second claim falls within the scope of the waiver. As set forth above, Petitioner's plea agreement included a section involving a waiver of post-conviction rights, specifically stating that Petitioner "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding . . . except for claims of prosecutorial misconduct or ineffective assistance of counsel."  Crim. ECF No. 45 at 9.  Petitioner's second claim fails to allege either.  He merely contends that he has "a constitutional right to possess firearms."  ECF No. 1 at 5.  In this claim, he does not assert any claims of either ineffective assistance of counsel or prosecutorial misconduct.

The plea agreement and waiver were also entered into knowingly and voluntarily. In the written Guilty Plea Agreement, Petitioner waived his right to attack his plea, conviction, and sentence except for claims of prosecutorial misconduct or ineffective assistance of counsel.  *See* Crim. ECF No. 45 at 8–9.  Petitioner signed the written plea agreement, which included the waiver provision, and further acknowledged that he fully understood his rights and waived them voluntarily of his own free will.  *Id.* at 11–12. Petitioner acknowledged in his plea agreement and during the colloquy that it was

entered knowingly and voluntarily. *Id.*; Crim. ECF No. 101 at 3–14. His plea was accepted following a colloquy in open court after the Court determined the plea was made knowingly, voluntarily, and intelligently. *Id.* at 51.

During the plea colloquy the Court reviewed with Petitioner the provisions relating to the waiver of appeal, including that the parties were giving up all rights to appeal all non-jurisdictional, non-sentencing issues, including but not limited to, any issues related to pretrial motions. *Id.* at 42–43. Petitioner specifically confirmed that he had discussed with counsel his right to file pretrial motions and was satisfied with the decision he and his attorney made at the pretrial stage to waive his right to file pretrial motions. The court advised Petitioner that by virtue of that waiver he could be deemed to have waived his right to file pretrial motions. He was also advised that in the plea agreement, he was giving up his right to make those motions to the Court of Appeals. *Id.* at 42–45.

Finally, the court advised Petitioner that in the plea agreement he was giving up his right to contest either his conviction or his sentence in any form of post-conviction proceedings, except for claims of prosecutorial misconduct and ineffective assistance of counsel. *Id.* at 45–46. As such, the review of the record in this case shows that Petitioner's waiver of his post-conviction rights was made knowingly, intelligently, and voluntarily. For these same reasons, and for the reasons discussed below, enforcement of the waiver would not result in a miscarriage of justice. Petitioner's second claim is therefore barred by the waiver provisions and accordingly denied.

14

### c. *Merits*

Finally, even if Petitioner's second claim was not procedurally defaulted or waived, it would still fail as a matter of law.  Petitioner challenges the constitutionality of 18 U.S.C. § 922(g)(4), arguing that it violates his Second Amendment right to possess firearms.  Section 922(g)(4) is a firearm regulation that prohibits anyone "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possessing "any firearm or ammunition."

The Second Amendment provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The Supreme Court has taken a broad view of the Second Amendment in its decisions.  For instance, in *Heller* the Supreme Court ruled that a regulation barring possession of handguns in homes was invalid. *Heller*, 554 U.S. 570.  Furthermore, in *Bruen* the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Bruen*, 587 U.S. at 17.  As such, for a gun regulation to be valid, it must do more than promote an "important interest," it must also be "consistent with this Nation's historical tradition of firearm regulation."  *Id.*

Constitutional challenges are either as-applied, where courts must examine the challenged statute based on a defendant's individual circumstances, or facial, meaning "that the law or policy at issue is unconstitutional in all its applications."  *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 304 (2024) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)).  However, a guilty plea forecloses as-

15

applied constitutional challenges.  *Veasley*, 98 F.4th at 908; *United States v. Deng*, 104 F.4th 1052, 1054 (8th Cir. 2024); *United States v. Seay*, 620 F.3d 919, 922 (8th Cir. 2010).

Here, by pleading guilty Petitioner foreclosed any as-applied challenge to Section 922(g)(4).  As discussed above, the record reflects that Petitioner knowingly, intelligently, and voluntarily pled guilty.  As a result of Petitioner's guilty plea, he may not assert an as-applied constitutional challenge to Section 922(g)(4).  *See Veasley*, 98 F.4th at 908.  Thus, only the Petitioner's facial challenge remains.

To succeed on a facial challenge, the challenger "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745.   Challenges against a regulation limiting Second Amendment protected conduct are examined using the test laid out in *Bruen*.  The Supreme Court in *Bruen* stated that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 697 U.S. at 17.  To justify such a regulation, "the government must demonstrate that the regulations is consistent with this Nation's historical tradition of firearm regulation." *Id.*

The possession of firearms precluded by 922(g)(4) is covered by the plain text of the Second Amendment.  Under *Bruen*, a historical inquiry is therefore necessary to determine whether Section 922(g)(4) is consistent with our Nation's historical gun regulations.  Section 922(g)(4) prohibits individuals who have been committed to a mental institution and who pose a threat of harm to themselves or others from possessing firearms or ammunition.  The Supreme Court in *United States v. Rahimi* explained that

16

firearm regulation within the United States historically distinguishes citizens who have been found a credible threat to the safety of others from those who have not. *United States v. Rahimi*, 602 U.S. 680, 700 (2024). *Rahimi* reinforced Supreme Court's decision in *Heller*, where it stated that "longstanding prohibitions on the possession of firearms by felons and the *mentally ill*," are "presumptively lawful regulatory measures." 554 U.S. at 626–27, n. 26 (emphasis added); *Rahimi*, 602 U.S. at 699 ("In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'") (quoting *Heller*, 554 U.S. at 626–27, n. 26).

Additionally, the Eighth Circuit in *Veasley*, in upholding the constitutionality of Section 922(g)(3) and its prohibitions on the possession of a firearm by those using or addicted to controlled substances, examined the historical tradition of firearm regulations. The Eighth Circuit found that "society made it a priority to keep guns out of the hands of anyone who was *mentally ill and dangerous*." *Veasley*, 98 F.4th at 915 (emphasis added). The *Veasley* court noted that historically the United States has limited the mentally ill's access to firearms due to the danger that they posed to themselves and others. *Id.* at 913–15 ("Gun rights were no exception. By the late 1800s, state legislatures allowed the prosecution of people who gave guns to the mentally ill. An 1881 Florida law, for example, made it illegal 'to sell, hire, barter, lend or give to any person or persons of unsound mind any dangerous weapon, other than an ordinary pocket-knife.' And in Kansas, it was unlawful to sell 'any pistol, revolver or toy pistol . . . or other dangerous weapons to . . . any person of notoriously unsound mind.' Along with the even longer tradition of confinement, these laws suggest that society made it a priority to keep

17

guns out of the hands of anyone who was mentally ill and dangerous.") (citations and quotations omitted).

Moreover, other District Courts in the Eighth Circuit have found Section 922(g)(4) constitutional based on an inquiry of our Nation's lengthy historical pedigree of barring the mentally ill from possessing firearms. *See United States v. Walker*, 747 F. Supp. 3d 1195 (D. Minn. 2024); *United States v. Franzky*, No. 4:23-CR-40022, 2024 WL 4494988 (D.S.D. Oct. 15, 2024). Thus Section 922(g)(4) is not facially unconstitutional.

Petitioner has been committed to mental institutions multiple times by courts that found his erratic behavior a concern to the welfare of himself and others. This all occurred within a year of the charged offenses. While committed Petitioner was diagnosed with bi-polar disorder, paranoid schizophrenia, major depressive disorder, anxiety disorder, cannabis abuse disorder, and oppositional defiant disorder. Crim. ECF No. 51 at 4–6, 12–13. Petitioner further engaged in erratic or dangerous behavior in connection with the charged offenses. As such, he falls within a group which society has historically prioritized limiting access to firearms.[3]

Section 922(g)(4) is "consistent with this Nations historical tradition of firearm regulations," it is constitutional, and Petitioner failed to establish "no set of circumstances exists under which the Act would be valid." *Bruen*, 597 U.S. at 17; *Salerno*, 481 U.S. at 745. Accordingly, Petitioner's second claim is denied.

---

[3] For these same reasons, any as-applied challenge would fail.

**Evidentiary Hearing**

An evidentiary hearing is not warranted in this case as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *see also Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (holding that a district court may forego an evidentiary hearing before dismissing a § 2255 motion where "accepting the petitioner's allegations as true, the petitioner is not entitled to relief") (citation omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Joesph Zarky's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of March, 2026.

19